UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10129-RCL |
| | ) | |
| MARK A. McARDLE, | ) | |
| Defendant. | ) | |

## PETITION OF EAST BOSTON SAVINGS BANK FOR ADJUDICATION OF THE VALIDITY OF ITS INTEREST IN THE REAL PROPERTY LOCATED AT 10 JANA LANE, STRATHAM, NEW HAMPSHIRE

NOW COMES East Boston Savings Bank (the "Bank"), which, pursuant to 21

U.S.C.A. § 853(n)(2) and (3) and Fed. R. of Crim. Proc. 32.2(c)(1) and in accordance with

Paragraph 4 of the Preliminary Order of Forfeiture dated February 21, 2007 (the

"Preliminary Order"), petitions this Court for a hearing to adjudicate the validity of its

interest in the real property located at 10 Jana Lane, Stratham, New Hampshire (the

"Property")[1], and following said hearing, requests that this Court amend and/or vacate

the Preliminary Order in order to ensure adequate protection of the Bank's interest in

the Property.  In support of its petition, the Bank states the following.

### I.    PROCEDURAL BACKGROUND

This petition involves a determination of the rights of the Bank, an innocent third-

party lender with a valid, first priority lien, in real estate owned by the defendant, Mark

A. McArdle ("McArdle"), which was preliminarily forfeited to the United States of

---

[1]    In the Preliminary Order, the address of the Property is improperly identified as "10 Jena Lane, Stratham, New Hampshire."

America. On April 22, 2004, a federal grand jury returned a twelve-count indictment against McArdle (and other defendants). The indictment contained a forfeiture allegation pursuant to 21 U.S.C. § 853. In that allegation, the grand jury charged that McArdle "shall forfeit to the United States . . . [the] real estate owned by [McArdle] and located at 10 Jena [sic] Lane, Stratham, New Hampshire."

On October 17, 2006, McArdle pled guilty to each Count of the Indictment in which he was named and consented to forfeiture of the Property. On February 21, 2007, this Court issued the Preliminary Order, entitling the Government to possession of McArdle's right, title and interest in the Property. The United States Drug Enforcement Administration was ordered to publish notice that any person, other than McArdle, having or claiming a legal interest in the Property must file a petition for a hearing to adjudicate the validity of the petitioner's alleged interest in the Property. In accordance with that notice, the Bank hereby submits this petition.

## II.     FACTS

The Bank is a savings bank organized and existing under the laws of the Commonwealth of Massachusetts. Its principal place of business is located at 10 Meridian Street, East Boston, Massachusetts.

On April 6, 2000, title to the Property was conveyed to McArdle and Lorraine K. McArdle. A true and accurate copy of the deed is attached as Exhibit 1.[2] When they purchased the Property, McArdle and Lorraine K. McArdle executed and delivered a

---

[2]     On March 18, 2003, title was conveyed from McArdle and Lorraine K. McArdle to McArdle. See, Exhibit 2.

promissory note, secured by a mortgage, to Revere Federal Savings and Loan Association.[3] The yearly interest rate on the promissory note was 7.50%. See, Exhibit 3.

Thereafter, McArdle sought to refinance the mortgage on the Property. Toward that end, McArdle completed and submitted to the Bank a Uniform Residential Loan Application (Exhibit 4) in which he applied for a loan in the sum of $95,000.00. After the loan application was submitted, the Bank, as part of its due diligence, performed an appraisal of the Property, checked McArdle's credit and verified McArdle's income by obtaining and reviewing McArdle's W-2 forms and pay stubs. Thereafter, the Bank issued a mortgage loan commitment letter (Exhibit 5). Following its issuance of the commitment letter, the Bank, as part of its continuing due diligence, obtained a plot plan/survey of the Property, examined the title on the Property and obtained a municipal lien certificate for the Property.

On March 20, 2003, McArdle made, executed and delivered to the Bank an Adjustable Rate Note in the original principal amount of Ninety Five Thousand Dollars ($95,000.00) (the "Promissory Note"), a true and accurate copy of which is attached as Exhibit 6. Under the terms and conditions of the Promissory Note, McArdle promised to pay the $95,000.00 in monthly payments commencing on May 1, 2003. See, Exhibit 6. The debt was to be paid in full no later than April 1, 2033. See, Exhibit 6.

In order to secure the payment of all of his liabilities under the Promissory Note as well as the performance of his covenants and agreements thereunder, McArdle

---

[3]    Danvers Savings Bank is the successor in interest to the Revere Federal Savings and Loan Association.

executed and delivered to the Bank a Mortgage on March 20, 2003 (the "Mortgage"), a true and accurate copy of which is attached as Exhibit 7.  Pursuant to the Mortgage, McArdle granted a security interest in the Property to the Bank.  See, Exhibit 7.  The Mortgage was recorded in the Rockingham County Registry of Deeds at Book 3982, Page 69 on March 24, 2003.  See, Exhibit 7.  When McArdle granted the Mortgage to the Bank, the Bank did not know, and was without cause to believe, that the Property was subject to forfeiture or that McArdle was involved in any criminal activity at the Property.

When McArdle refinanced his mortgage on the Property, the Danvers Savings Bank was paid the sum of $83,530.59 in order to payoff its mortgage.  See, Exhibit 8.  After payment of that sum to the Danvers Savings Bank and payment of the closing costs and fees, McArdle only netted the sum of $7,768.00.  On May 1, 2003, the Danvers Savings Bank issued a Discharge of Mortgage, a true and accurate copy of which is attached as Exhibit 9.  On May 21, 2003, the Discharge of Mortgage was recorded in the Rockingham County Registry of Deeds at Book 4035, Page 1682.  See, Exhibit 10.

As of April 11, 2007, McArdle owed the sum of $90,185.76 to the Bank.  Of this sum, $85,944.46 was owed for principal, $131.30 was owed for interest[4], $200.00 was owed for appraisal fees and $3,910.00 was owed for attorneys' fees and costs.[5]

---

[4]      Per diem interest accrues at the rate of $13.13 from and after April 11, 2007.

[5]      Under Paragraph 9 of the Mortgage, amounts disbursed by the Bank (including those for reasonable attorney's fees) in connection with a forfeiture proceeding "become additional debt of [McArdle] secured by [the Mortgage]."  See, Exhibit 7.

## III.    DISCUSSION

### A.    THE STANDING REQUIREMENT

Once a property is forfeited, the government steps into the shoes of the defendant and acquires only the rights of the defendant at the time of the criminal acts, and nothing more. United States v. Harris, 246 F.3d 566, 575-576 (6th Cir. 2001). See also, County of Oakland v. Vista Disposal, Inc., 826 F. Supp. 218, 224 (E.D. Mich. 1993) ("[t]he government, through forfeiture, simply steps into the defendant's shoes" and acquires through forfeiture "no greater interest than the defendant held at the time the defendant committed the criminal acts"). When property is ordered forfeited pursuant to 21 U.S.C.A. § 853, third parties asserting a legal interest in the forfeited property are entitled to a judicial determination of the validity of the interests they assert. See, 21 U.S.C.A. § 853(n)(2) (third parties asserting a legal interest in forfeited property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property"). See also, United States v. Perkins, 382 F. Supp.2d 146, 148 (D. Me. 2005).

In order to defeat the government's title to a defendant's assets in a post-conviction hearing and bring a claim under § 853(n), the petitioner is required to establish standing to petition the Court. See, United States v. Padilla-Galarza, 351 F.3d 594, 600 (1st Cir. 2003); United States v. $364,960.00 in U.S. Currency, 661 F.2d 319, 326 (5th Cir. 1981) (stating that a claimant who challenges the government's forfeiture of money or property under a federal statute "must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture").

Standing in forfeiture cases has "both constitutional and statutory aspects." United

States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass

Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1ˢᵗ Cir. 2003). "As to

constitutional standing, [i]t is well established that a party seeking to challenge a

forfeiture of property must first demonstrate an ownership or possessory interest in the

seized property in order to have standing to contest the forfeiture." Id. at 41. However,

"[a]t the initial stage of intervention, the requirements for a claimant to demonstrate

constitutional standing are very forgiving" and "[i]n general, any colorable claim on the

defendant property suffices." Ibid.

In the criminal forfeiture context, to establish statutory standing, a petitioner

must demonstrate, by a preponderance of the evidence, that:

> (A)    the petitioner has a legal right, title or interest in the property, and such
> right, title, or interest renders the order of forfeiture invalid in whole or in
> part because the right, title, or interest was vested in the petitioner rather
> than the defendant or was superior to any right, title, or interest of the
> defendant at the time of the commission of the acts which gave rise to the
> forfeiture of the property under this section; or
>
> (B)    the petitioner is a bona fide purchaser for value of the right, title, or
> interest in the property and was at the time of purchase reasonably
> without cause to believe that the property was subject to forfeiture under
> this section.

See, 21 U.S.C.A. § 853(n)(6). See also, United States v. Campos, 859 F.2d 1233, 1238 (6ᵗʰ

Cir. 1988). A petitioner's proof of either of these requires the Court to amend its order

of forfeiture. See, 21 U.S.C.A. § 853(n)(6).

The bona fide purchaser exception of § 853(n)(6)(B) includes those individuals

who purchase for value forfeitable property as innocent lienholders. See, Harris, 246

F.3d at 575. To make out a prima facie case under § 853(n)(6)(B), the Bank must

demonstrate that (1) it had a legal right, title or interest in the Property, (2) it was a bona

fide purchaser for value of the right, title or interest in the Property, and (3) it was, at

the time of the purchase, reasonably without cause to believe that the Property was

subject to forfeiture. See, United States v. Lavin, 942 F.2d 177, 179 (3d Cir. 1991). For

the reasons discussed below, the Bank satisfies all of these requirements, each of which

shall be addressed seriatim.[6]

      1.     The Bank Has a "Legal Right, Title or Interest" in the Property.

The Bank undeniably has a "legal right, title or interest" in the Property. As set

forth above, the Bank is the grantee of the Mortgage. See, Exhibit 7. As the mortgagee

on the Property, the Bank has a legal interest in the Property secured by the Mortgage.

See, Bank v. International Business Machines Corporation, 99 F.3d 46, 48 (1st Cir. 1996).

See also, Maglione v. BancBoston Mortgage Corp., 29 Mass. App. Ct. 88, 90 (1990) (the

granting of a mortgage vests title in the mortgagee to the land placed as security for the

underlying debt).[7] The requisite proof has been adduced by the Bank to establish a

prima facie case that it has a "legal right, title or interest" in the Property. See, Exhibit 7.

      2.     The Bank was a Bona Fide Purchaser for Value of the Right, Title or Interest in
                        the Property.

---

[6]     The Bank concedes that it cannot recover under 21 U.S.C.A. § 853(n)(6)(A) because the Bank's legal interest in the Property vested after McArdle committed his crimes. See, United States v. Hooper, 229 F.3d 818, 821 (9th Cir. 2000).

[7]     State law determines whether the Bank has a property interest. See, Hooper, 229 F.3d at 820. As the Appeals Court's decision in Maglione makes clear, the Bank undoubtedly has an interest in the Property under the laws of Massachusetts.

The Bank was a bona fide purchaser for value of the right, title or interest in the Property. As used in § 853(n)(6)(B), the term "purchase" is equated with the term "transaction." See, United States v. Reckmeyer, 836 F.2d 200, 207 (4th Cir. 1987) (although § 853(n)(6)(B) speaks in terms of a bona fide purchaser for value, "it is obvious from Congress' goal in enacting this provision that it did not mean the term "purchaser" to operate as a limitation on the class of those who, having engaged in arms'-length transactions with the defendant, were entitled to the protection of their interests"); United States v. Mageean, 649 F. Supp. 820, 829 (D. Nev. 1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987) ("given the purposes of § 853(n)(6)(B), there is no reason that a good faith provider of goods and services cannot be a bona fide purchaser under the statute"). As the term is used in § 853(n)(6)(B), a "bona fide purchaser" is one who gives value in an arm's length transaction with the expectation of receiving equivalent value in return.

In this case, the Bank entered into an arm's length transaction with McArdle. In exchange for the sum of $95,000.00 paid to, or on behalf of McArdle[8], the Bank was granted the Mortgage on the Property. See, Exhibit 7. Under this transaction, both the Bank and McArdle only received a fair exchange for what each gave. The transaction was negotiated, and entered into, by unrelated parties, and each party acted in its/his own self-interest.

---

[8]    As set forth heretofore, $83,530.59 of the $95,000.00 was paid to the Danvers Savings Bank in order to payoff its mortgage. See, Exhibit 8. McArdle received a net payment of only $7,768.00, a relatively nominal sum which did not reasonably suggest to the Bank that McArdle was involved in, or associated with, any ongoing criminal activity at the Property.

Moreover, McArdle's desire to refinance the mortgage on the Property was entirely plausible and logical. Under the promissory note he had with Danvers Savings Bank, McArdle was paying interest at the yearly rate of 7.50% ($17.08 per diem). See, Exhibit 3. Following his refinancing of the mortgage on the Property, McArdle only paid interest at the yearly rate of 5.50% ($13.13 per diem). See, Exhibit 6. McArdle's desire to save 2.00% in interest was eminently sensible, and, given this considerable savings, the Bank had absolutely no reasonable basis upon which to believe that McArdle's desire to refinance was based on any reason (let alone illegal reason) other than to save money.

For all of these reasons, the Bank is a "bona fide purchaser" under § 853(n)(6)(B). Consequently, the Bank possesses the requisite standing under 21 U.S.C.A. § 853(n)(6)(B).

3.    The Bank was Reasonably Without Cause to Believe that the Property was Subject to Forfeiture When McArdle Granted the Mortgage.

When McArdle granted the Mortgage to the Bank, the Bank was reasonably without cause to believe that the Property was used in the furtherance of illegal drug activity, and as such, was subject to forfeiture. McArdle's involvement in criminal activity at the Property was unknown, and unknowable, to the Bank. The Bank exercised the requisite and appropriate due diligence when it processed and considered McArdle's loan application.[9] In connection with its due diligence, the Bank was not

---

[9]    As mentioned above, as part of its due diligence, the Bank performed an appraisal of the Property, checked McArdle's credit, verified McArdle's income by obtaining and reviewing McArdle's W-2 forms and pay stubs, obtained a plot plan/survey of the Property, examined the title on the Property and obtained a municipal lien certificate for the Property.

required, however, to undertake an exhaustive, costly and time-consuming investigation in an effort to ascertain whether McArdle was involved in, or associated with, any ongoing criminal activity at the Property or if there were any actual or potentially competing claims to the Property. The performance of such an investigation is patently absurd and imposes a manifestly unreasonable and onerous burden upon the Bank. Such a conclusion is consistent with the notion that the good faith purchaser exception set forth in § 853(n)(6)(B) is designed to facilitate commerce "by removing an impediment to commercial transactions – to wit, the need for a purchaser to engage in exhaustive research, in order to discover whether there are competing claims to the property, prior to consummating a sale." Lavin, 942 F.2d at 186.

Before taking the Mortgage from McArdle, the Bank neither identified any order of forfeiture when it examined the title nor uncovered any other evidence which would have suggested that the Property was being used in the furtherance of illegal drug activity. Simply put, the situation in which the Bank finds itself is not the result of its own failure either to exercise reasonable due diligence or minimize its own risk.

This is not a case where the Bank is a straw man holding nominal title as a subterfuge for a drug trafficker. Instead, the Bank is the true owner of a legitimate interest in the Property. See, United States v. Vacant Land, 15 F.3d 128, 130 (9th Cir. 1993).

For all of these reasons, the Bank was an innocent purchaser for valuable consideration without knowledge of the forfeitability of the Property. Consequently,

the Bank possesses the requisite standing under 21 U.S.C.A. § 853(n)(6)(B), and its

interest in the Property must be protected.


B.    THE REMEDY

Where, as here, a party petitioning pursuant to § 853(n)(6) establishes all

elements relating to standing, the Court should proceed to hold a hearing to consider

said petition. In this case, for the reasons discussed heretofore, the Bank has made a

prima facie showing of a legal interest to the Property, and a hearing is appropriate.

Campos, 859 F.2d at 1240.

IV.    CONCLUSION

For all of the foregoing reasons, East Boston Savings Bank petitions this Court for

(1) a hearing to adjudicate the validity of its interest in the real property located at 10

Jana Lane, Stratham, New Hampshire, (2) a determination that it has a legal right, title

or interest in the real property located at 10 Jana Lane, Stratham, New Hampshire, (3) a

determination that it was a bona fide purchaser for value of the right, title or interest in

the real property located at 10 Jana Lane, Stratham, New Hampshire and was, at the

time of purchase, reasonably without cause to believe that the property was subject to

forfeiture under 21 U.S.C.A. § 853, (4) a determination that it possesses a properly-

perfected first priority security interest in the real property located at 10 Jana Lane,

Stratham, New Hampshire and that the United States is obligated to pay it the sum of

$90,185.76,[10] plus all accruing interest and attorney's fees and costs from and after April

---

[10]    The means by which this sum was calculated is set forth on page 4.

11

11, 2007, from the proceeds of the United States' sale of said property, and (5) the entry

of an Order amending the Preliminary Order of Forfeiture dated February 21, 2007

consistent with subparagraphs (3) and (4), above.

VERIFICATION

I, Philip F. Freehan, hereby depose and say that I am an Executive Vice President

and Senior Loan Officer at East Boston Savings Bank and that I have read the foregoing

Petition of East Boston Savings Bank for Adjudication of the Validity of its Interest in

the Real Property Located at 10 Jana Lane, Stratham, New Hampshire and that the

content of the same is true and accurate of my own knowledge and that the Petition

accurately sets forth the nature and extant of Petitioner's interest in the subject property

and sets forth the time and circumstances of Petitioner's acquisition of said interest.

Signed under the penalties of perjury this _11th_ day of April, 2007.

PHILIP F. FREEHAN
Executive Vice President/Senior Loan Officer
East Boston Savings Bank

EAST BOSTON SAVINGS BANK,
By its attorneys,

THEODORE C. REGNANTE – BBO NO. 415360
SETH H. HOCHBAUM - BBO NO. 568118
REGNANTE, STERIO & OSBORNE LLP
Edgewater Office Park
401 Edgewater Place, Suite 630
Wakefield, MA 01880-6210
(781) 246-2525
DAVID J. GALLAGHER – BBO NO. 183120

Dated:  April 13, 2007

## CERTIFICATE OF SERVICE

I, Seth H. Hochbaum, hereby certify that the foregoing Petition of East Boston

Savings Bank for Adjudication of the Validity of its Interest in the Real Property

Located at 10 Jana Lane, Stratham, New Hampshire was served by mailing the same

first class, postage prepaid, to Michael J. Pelgro, Esq., Foley Hoag LLP, 155 Seaport

Boulevard, Boston, MA 02210, Nancy Rue, Esq., Assistant U.S. Attorney, United States

Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210,  and Janice Bassil, Esq.,

Carney & Bassil, 20 Park Plaza, Suite 1405, Boston, MA 02116, on this 13th day of April,

2007.

SETH H. HOCHBAUM - BBO NO. 568118
REGNANTE, STERIO & OSBORNE LLP
Edgewater Office Park
401 Edgewater Place, Suite 630
Wakefield, MA 01880-6210
(781) 246-2525