# EXHIBIT 1

Book 3465  Page 1340  Suffix    Docket 17274   This image for Q at copyrm1  at Rockingham County on 03/02/27

BK 3465 PG 1340

2000 APR -6  AM 10: 57

· ( 001'7274

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

### KNOW ALL MEN BY THESE PRESENTS

That we, ALLEN M. FERRARI and MADELINE A. FERRARI, of 10 Jana Lane, Stratham, , Rockingham County, State of New Hampshire, for consideration paid, grant to MARK A. McARDLE and LORRAINE K. McARDLE of 171 Shore Drive, Winthrop, Suffolk County, Massachusetts,. With Warranty Covenants, to the said MARK A. McARDLE as joint tentants with rights of survivorship and not as tenants in common, the following described real estate:

A certain lot or parcel of land, with the buildings thereon, situated on the Northeasterly side Jana Lane, in Stratham, Rockingham County, State of New Hampshire, and being known as Lot No. 4 on Plan entitled 'Plan of Lots, Longview, Staratham, NH" for Walter L. and Eleanor K Biery, dated August, 1972 by John W. Durgin, C.E., said Plan recorded in Rockingham Records No. D-3172, said lot being further  bounded and described as follows:

BEGINNING on the Northeasterly side of said Jana Lane at the southerly corner of the herein described premises, thence N 55 ˚ 15' W along said Jana Lane 190.0 feet; thence N 34˚ 45' E along Lot No. 5 on said Plan 241.56 feet; thence S 54˚ 44' E along land now or formerly of Alexander 94.36 feet; thence continuing S 54˚ 16' E still along said Alexander land 95.66 feet; thence S 34˚ 45' W along Lot No. 3 on said Plan 239.07 feet to the point of beginning.

Meaning and intending to convey  the same premises conveyed to the grantors by deed of Iorandou, et ux dated August 15, 1975 and recorded in the Rockingham County Registry of Deeds in Volume 2241 at page 1798.
This is not homestead property.

Witness our hands and seals this 6th day of April, 2000.

Witness:                                        _Allen M Ferrari_
_Pimela M._                                   Allen M. Ferrari

_Pemela M._                                   _Madeline A Ferrari_
                                               Madeline A. Ferrari

### State of New Hampshire

Rockingham, ss.                              April 6, 2000

Then  personally appeared the above named Allen M. Ferrari and Madeline A. Ferrari and acknowledged the foregoing instrument to be their free act and deed before me,



_Pimela M._
Justice of the Peace/Notary Public
My Commission Expires

STATE OF NEW HAMPSHIRE

DEPARTMENT
OF
REVENUE
ADMINISTRATION

REAL ESTATE
TRANSFER TAX

2 THOUSAND  8 HUNDRED AND 50 DOLLARS

040000       427486      $2850.00

VOID IF ALTERED

# EXHIBIT 2

# CERTIFICATE

I, Cathy Ann Stacey, Register of Deeds for the County of Rockingham, in the State of New Hampshire, do hereby certify that the within is a true copy of the record of an instrument recorded upon and in the Registry of Deeds of said County, and referenced as
     Book 3982 Page 0068          ; the records of which I am the custodian.

Dated, Brentwood, NH ___April 4, 2007_____

Attest, _____

BK 3982 PG 0068

RETURN TO:
EDWARD L. LYNCH
ATTORNEY AT LAW
45 Franklin Street
Lynn, MA 01902

031941

003 MAR 24  PM 2:53

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

_____[Space Above This Line For Recording Data]_____

## Warranty Deed

We, Mark A. McArdle, an unmarried person, and Lorraine K. McArdle, an unmarried person, of 10 Jana Lane, Stratham, Rockingham County, New Hampshire,

for consideration paid, grant to        **Mark A. McArdle, an unmarried person,**

of **10 Jana Lane , Stratham, NH 03885** with **WARRANTY COVENANTS**

(Description, and Incumbrances, if any)

A certain lot or parcel of land, with the buildings thereon, situated on the Northeasterly side Jana Lane, in Stratham, Rockingham County, State of New Hampshire, and being known as Lot 4 on Plan entitled "Plan of Lots, Longview, Stratham, NH" for Walter L. and Eleanor K. Biery, dated August, 1972 by John W. Durgin, C.E., said Plan recorded in Rockingham Records No. D-3172, said lot being further bounded and described as follows:

BEGINNING on the Northeasterly side of said Jana Lane at the southerly corner of the herein described premises, thence N 55° 15' W along said Jana Lane 190.0 feet; thence N 34° 45' E along Lot No. 5 on said Plan 241.56 feet; thence S 54° 44' E along land now or formerly of Alexander 94.35 feet; thence S 54° 16' E still along said Alexander land 95.66 fee; thence S 34° 45' W along Lot No. 3 on said Plan 239.07 feet to the point of beginning.

For our title see deed dated April 6, 2000 and recorded with Rockingham County Registry of Deeds at Book 3465, Page 1340.

This is a non-contractual transfer and is exempt from New Hampshire State Transfer Tax pursuant to NH RSA 78-B:2 (IX).

Witness our hands this _18th_ day of March, 2003.

_Mark M'Ardle_                          _Lorraine K. M'Ardle_
Mark A. McArdle                          Lorraine K. McArdle

**Commonwealth of Massachusetts**
County of _Middlesex_

In _Revere_ on the _18th_ day of March, 2003
before me personally appeared  Mark A. McArdle and Lorraine K. McArdle
to me known and known by me to be the parties executing the foregoing instrument, and they
acknowledged said instrument, by them executed, to be their free act and deed.

_Jill P. Sasso_
Jill P. Sasso  - Notary Public
My commission expires: _April 30, 2008_

10 Jana Lane, Stratham, NH
(PRINT OR TYPE ADDRESS OF GRANTEE)

**Error! AutoText entry not defined.**

# EXHIBIT 3

**MAIL TO: Danvers Savings Bank**
**ATTN:  Loan Servicing Department**
**One Conant Street**
**Danvers, MA 01923**

 **Danvers Savings Bank**

**Phone:  (978) 777-2200**
**Fax:      (978) 762-3514-as of 8/13/02**

## MORTGAGE PAYOFF REQUEST FORM

| ACCOUNT NUMBER: | 1099911094 | Prepared By: | 3/14/03 |
|---|---|---|---|
| MORTGAGOR(S): | Mark McArdle | Verified By: | |
| | Lorraine McArdle | Officer Approval (Commercial): | |

| PROPERTY ADDRESS: | 10 Jarra Ln |
|---|---|
| | Stratham  NH  03885 |
| MAILING ADDRESS: | Same |

| Loan Type: | EQUITY     CONSUMER |
|---|---|
| | RESIDENTIAL     COMMERCIAL |

REQUESTED BY (Attorney):  Edward Lynch
CONTACT NAME:  Susan
ADDRESS:  115 Franklin St
           Lynn MA 01902
PHONE #  1-781-581-3362
FAX #  1-781-581-6337
LOAN OFFICER:  Patricia Pace
    TAXES PAID BY BANK:  ✓    Date of Mortgage: 4/10/00
PARTICIPATION:  YES:          NO:  X
    INVESTOR:
ACCOUNT FROZEN:  X    TELLER WARNING:  X
PTD:  3/1/03  INT RATE: 7.50 % PER DIEM: $ 17.08

**FOR DSB USE ONLY:**
**COPY OF CHECK**

## PAYOFF CALCULATION

| EFFECTIVE DATE: | 3/20/03 |
|---|---|
| PRINCIPAL BALANCE: | 83,103.67 |
| INTEREST DUE: | 324.44 |
| LATE CHARGES: | |
| OTHER CHARGES: | |
| ESCROW: TAXES: | |
|     INSURANCE: | |
| TOTAL PAYOFF AMOUNT: | $ 83,428.11 |

17.08
6
———
102.48

**MAKE CHECK PAYABLE TO:**
**DANVERS SAVINGS BANK**

*NOTE:  This account is FROZEN.  If a payoff is cancelled please call the bank!!*

83,428.11
    102.48
———————
83,530.59

# EXHIBIT 4

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

| Mortgage Applied for: | VA | **x** Conventional | Other: | | Agency Case Number | Lender Case Number | |
|---|---|---|---|---|---|---|---|
| | FHA | FmHA | | | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | Fixed Rate | Other (explain): | | |
|---|---|---|---|---|---|---|---|
| $95,000.00 | 5.500 % | 360 | | GPM | **x** ARM (type): 5/3 ARM | | |

Subject Property Address (street, city, state, ZIP)                                                                                      No. of Units

**10 Jana Lane, Stratham, NH 03885**                                                                                                      One

Legal Description of Subject Property (attach description if necessary)                                                                    Year Built

**Book 3465 Page 1340**

| Purpose of Loan | Purchase | Construction | | Other (explain): | Property will be: Primary | Secondary Residence | |
|---|---|---|---|---|---|---|---|
| | **x** Refinance | Construction-Permanent | | | **x** Residence | Residence | Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | made | to be made |
|---|---|---|---|---|---|---|
| | $0.00 | $ 83,814.00 | cash out | | | |
| | | | | Cost: $ 0.00 | | |

Title will be held in what Name(s) **Mark McArdle**                         Manner in which Title will be held                Estate will be held in:

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)          **Individual**          **x** Fee Simple / Leasehold (show expiration date)

**Mtg Proceeds**

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| **Mark McArdle** | |

| Social Security Number | Home Phone (incl. area code) | Age | Yrs. School | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | 603-772-0026 | 34 | 12 | | | | |

| Married | **x** Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. / ages | Married | Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no. / ages |
|---|---|---|---|---|---|
| Separated | | | Separated | | |

Present Address (street, city, state, ZIP) **x** Own [ ] Rent __4__  No. Yrs.     Present Address (street, city, state, ZIP) [ ] Own [ ] Rent ____ No. Yrs.

**10 Jana Lane**
**Stratham, NH 03885**

If residing at present address for less than two years, complete the following:

Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ____ No. Yrs.  Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ____ No. Yrs.

Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ____ No. Yrs.  Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ____ No. Yrs.

| Name & Address of Employer | Self Employed | Yrs. on this job | Name & Address of Employer | Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| **KeySpan** | | 1 Yrs 6 mos | | | |
| **3rd Avenue** | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| **Burlington, MA** | | 1 Yrs 6 mos | | | |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| **HVAC Tech /** | | 800-539-7726 | | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | **x** Self Employed | Dates (from - to) | Name & Address of Employer | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| **The Line Steak & Brew** | | 12/1/1999 - | | | |
| **10 Woodlawn Avenue** | | 12/1/2001 | | | |
| **Everett, MA** | | Monthly Income | | | Monthly Income |
| | | $ 2000 | | | $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| **Owner /** | | 000-000-0000 | | | |

| Name & Address of Employer | Self Employed | Dates (from - to) | Name & Address of Employer | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income | | | Monthly Income |
| | | $ | | | $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3/20/03 | X | |

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 3,002.82 | $ | $ 3,002.82 | Rent | 0.00 | //////// |
| Overtime | 333.28 | | 333.28 | First Mortgage (P&I) | 0.00 | $ 539.40 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 50.00 | 50.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 175.00 | 292.75 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 3,336.10 | $ 0.00 | $ 3,336.10 | Total | $ 225.00 | $ 882.15 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B)
or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| List checking and savings accounts below | | Danvers Savings Bank | 664.00* | 83,814.00 |
| Name and address of Bank, S&L, or Credit Union | | One Conant St | 360 | |
| Fleet Bank | | Danvers, MA 01923 | | |
| | | | | |
| | | Acct. no. 10999110940400 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. 82835325 | $ 1,260.32 | FRD MOTOR CR | 459.00 | 20,070.00 |
| Name and address of Bank, S&L, or Credit Union | | | 36 | |
| Fleet Bank | | | | |
| | | Acct. no. JNN575PJX1 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. 182835325 | $ 6,439.84 | ESB/HARLEY DAVIDSON CR | 287.00 | 14,326.00 |
| Name and address of Bank, S&L, or Credit Union | | | 86 | |
| | | Acct. no. 20010902011506 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. | $ | CHASE AUTO | 387.00 | 10,038.00 |
| Name and address of Bank, S&L, or Credit Union | | | 39 | |
| | | Acct. no. 4320174979 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. | $ | Fleet CC | 100.00 | 5,000.00 |
| Stocks & Bonds (Company name/number & description) | $ | | 50 | |
| | | Acct. no. 4305500329147287 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Life insurance net cash value | $ | HHLD Bank | 89.00 | 4,437.00 |
| Face amount: $ 0.00 | 0.00 | | 50 | |
| Subtotal Liquid Assets | $ 7,700.16 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. 5466410001525093 | | |
| | 241,000.00 | Name and address of Company | $ Pmt./Mos. | $ |
| Vested interest in retirement fund | $ 0.00 | BENFCL/HFC | 128.00 | 3,373.00 |
| Net worth of business(es) owned (attach financial statement) | $ | | 48 | |
| | 0.00 | | | |
| Automobiles owned (make and year) | $ | Acct. no. 520190110672 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1,542.00 | |
| Total Assets a. | $ 248,700.16 | $ 105,689.16 | Total Liabilities b. | $ 143,011.00 |

Borrower's Signature:

X _____  Date 3/30/03

Co-Borrower's Signature:

X _____  Date _____

Freddie Mac Form 65 10/92 (9210).13    Fannie Mae Form 1003 10/92

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10 Jana Lane<br>Stratham , NH | SFD | $ 241,000.00 | $ 83,814.00 | $ 0.00 | $ 664.00 | $ 0.00 | $ 0.00 |
| | | | | | | | |
| | | | | | | | |
| Totals | $ 241,000.00 | $ 83,814.00 | $ 0.00 | $ 664.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

| | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| a. | Purchase price | $ 0.00 | | | | | |
| b. | Alterations, improvements, repairs | 0.00 | a. Are there any outstanding judgments against you? | | x | | |
| c. | Land (if acquired separately) | 0.00 | b. Have you been declared bankrupt within the past 7 years? | | x | | |
| d. | Refinance (incl. debts to be paid off) | 83,814.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | x | | |
| e. | Estimated prepaid items | 803.21 | d. Are you a party to a lawsuit? | | x | | |
| f. | Estimated closing costs | 1,542.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | x | | |
| g. | PMI, MIP, Funding Fee | 0.00 | | | | | |
| h. | Discount (if Borrower will pay) | 0.00 | | | | | |
| i. | Total costs (add items a through h) | 86,159.21 | | | | | |
| j. | Subordinate financing | 0.00 | | | | | |
| k. | Borrower's closing costs paid by Seller | 0.00 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | x | | |
| l. | Other Credits (explain) | | | | | | |
| | Cash Deposit | 0.00 | g. Are you obligated to pay alimony, child support, or separate maintenance? | | x | | |
| | Coupon | 50.00 | h. Is any part of the down payment borrowed? | | x | | |
| | | | i. Are you a co-maker or endorser on a note? | | x | | |
| | | | j. Are you a U.S. citizen? | x | | | |
| | | | k. Are you a permanent resident alien? | | x | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 95,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | x | | | |
| n. | PMI, MIP, Funding Fee financed | 0.00 | m. Have you had an ownership interest in a property in the last three years? | x | | | |
| o. | Loan amount (add m & n) | 95,000.00 | (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. | Cash from/ to Borrower (subtract j, k, l & o from i) | -8,890.79 | (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in the application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.
**Certification:** I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3/20/03 | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| I do not wish to furnish this information | | I do not wish to furnish this information | |
| **Race/National Origin:** American Indian or Alaskan Native ☐ Asian or Pacific Islander ☐ [X] White, not of Hispanic origin ☐ Black, not of Hispanic origin ☐ Hispanic | | **Race/National Origin:** American Indian or Alaskan Native ☐ Asian or Pacific Islander ☐ White, not of Hispanic origin ☐ Black, not of Hispanic origin ☐ Hispanic | |
| Other (specify) | | Other (specify) | |
| **Sex:** Female ☐ [X] Male | | **Sex:** Female ☐ Male ☐ | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Paul Cheremka | Conventional - East Boston Savings Bank |
| ☐ face-to-face interview | Interviewer's Signature               Date | 10 Meridian Street |
| [X] by mail | | East Boston, MA 02128 |
| ☐ by telephone | Interviewer's Phone Number (incl. area code) | |
| | (617) -567-1500 | |

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br><br>Mark McArdle | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 1/20/03 | X | |

## STATEMENT OF ASSETS AND LIABILITIES
(Supplement to Uniform Residential Loan Application)

**Name** Mark McArdle

The following information is provided to complete and become a part of the application for a mortgage in the amount of $ 95,000.00
with interest at **5.500** %, for a term of **360** months and to be secured by property known as:
Subject Property Address (street, city, state, & zip code)

10 Jana Lane                                    Stratham, NH 03885
Legal Description of Subject Property (attach description if necessary)

Book 3465 Page 1340

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐  Jointly ☐  [X] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | **Name and address of Company** | $ Pmt./Mos. | $ |
| List checking and savings accounts below | | AMEX | 92.00 | 1,831.00 |
| Name and address of Bank, S&L, or Credit Union | | | 20 | |
| | | Acct. no. **0605915040133679** | | |
| Acct. no.                              $ | | **Name and address of Company** | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | AMEX | 0.00 | 122.00 |
| | | | 0 | |
| | | Acct. no. **0605915040133354** | | |
| Acct. no.                              $ | | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no.                              $ | | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no.                              $ | | Name and address of Company | $ Pmt./Mos. | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Pmt./Mos. | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $          92.00 | |
| **Total Assets a.** $        248,700.16 | | $     105,689.16 | **Total Liabilities b.** $ | 143,011.00 |

Borrower's Signature
X _____  Date
Co-Borrower's Signature
X _____  Date

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property ▼ | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 241,000.00 | $ 83,814.00 | $ 0.00 | $ 664.00 | $ 0.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.

**Certification:** I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3/20/03 | X | |

| | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Paul Cheremka | Conventional - East Boston Savings |
| ☐ face-to-face interview | Interviewer's Signature | 10 Meridian Street |
| ☒ by mail | | East Boston, MA 02128 |
| ☐ by telephone | Interviewer's Phone Number (incl. area code) | |
| | (617)-567-1500 | |

# EXHIBIT 5

THANK YOU



**East Boston Savings Bank**®

Ten Meridian Street, East Boston, MA 02128 (617) 567-1500

# MORTGAGE LOAN COMMITMENT

February 13, 2003

Mark McArdle

**Mailing Address:**

10 Jana Lane
Stratham, NH 03885

Re:    10 Jana Lane
Stratham, NH 03885

Dear Mark:

East Boston Savings Bank is pleased to inform you that your mortgage application for the above mentioned property has been approved. This mortgage commitment is subject to the satisfactory provision and review of the following matters and conditions set forth as follows:

## I  LOAN DATA

| | |
|---|---|
| **Purpose of Loan:** | Refinance |
| **Property Type:** | Single Family Dwelling,  Number of Units: 1 |
| **Mortgage Program:** | Conventional,  5/3 ARM 30 Year |
| **Loan Request:** | $95,000.00 |
| **Loan Term:** | 360  Months |
| **Contract Interest Rate** | 5.5000% |
| **Points:** | 0.00000000% |
| **Commitment Expiration Date:** | April 21, 2003 |

**Rate Lock Expiration Date:**
(If Applicable)

**Principal and Interest Payment:**    $539.40
Please refer to the enclosed Mortgage Commitment Addendum for additional repayment information.

**Closing Attorney:**      Edward L Lynch
45 Franklin Street
Lynn, MA 01902

(781)581-3362

FEB 2 6 2003

Mark McArdle
10 Jana Lane
Stratham, NH 03885-
03-01-000094

| Initial | Date | Initial | Date |
|---|---|---|---|
|  |  |  |  |

| Initial | Date | Initial | Date |
|---|---|---|---|
|  |  |  |  |

## II:    CONDITIONS SPECIFIC TO THIS LOAN

Please be advised that the receipt of the conditions listed below are required to satisfactorily complete your file and to proceed to closing your loan.

If you have any questions regarding any of the conditions requested of you, please contact your loan originator or processor right away.

### The following items are to be provided by the borrower and satisfactorily reviewed by East Boston Savings Bank prior to closing :

1    Enclosed please find the following revised disclosures reflecting ARM program, to be signed and returned with signed copy of this commitment letter:

Signed Residential Mortgage Application ☐, Good Faith Estimate ☐, Truth-in-Lending Disclosure Statement ☐, Rate-Lock Agreement ☐, ARM Program Disclosure ☐, and this Commitment Letter ☐.

2    Receipt of borrower's two most recent years of W-2's, evidencing a continuous employment history.

3    Letter from existing co-owner, agreeing to relinquish interest in subject property.

### Items to be ordered and satisfactorily reviewed by Bank prior to closing:

1    Written property appraisal for subject property reflecting acceptable Loan to Value Ratio for subject mortgage program.

2    Flood Hazard Zone determination certificate.

3    Satisfactory Verification of Employment for all salaried employees.

Note:  Please be advised that the Bank may re-verify employment via verbal or written verification of employment from employer or by requesting a copy of the most current pay stub prior to closing.

### Other Loan Conditions and Stipulations:

1    Pay Off Danvers Savings Bank, account # 10999110940400, with loan proceeds at closing.

2    $50.00 coupon to be applied towards closing costs.

3    New deed reflecting revised ownership status to be drawn up at closing.

### IMPORTANT NOTICES*******PLEASE READ:

1    ALL BORROWERS MUST SIGN AND RETURN THIS COMMITMENT BY FEBRUARY 24, 2003 OR THE BANK WILL CONSIDER THE OFFER OF THIS COMMITMENT TO BE REJECTED AND THE LOAN WILL BE TERMINATED.

2    EAST BOSTON SAVINGS BANK RESERVES THE RIGHT TO RENEGOTIATE OR WITHDRAW THIS COMMITMENT IF IT IS DETERMINED THAT THERE HAS BEEN BORROWER MISREPRESENTATION OR SIGNIFICANT AND MATERIAL ADVERSE CHANGES TO THE NATURE OF THE QUALIFYING INCOME, ASSETS, BORROWER CREDIT PROFILE, OR COLLATERAL USED IN THE UNDERWRITING PROCESS.

3    PLEASE BE ADVISED THAT YOU MUST CONTINUE TO MAKE ALL REGULARLY SCHEDULED MORTGAGE PAYMENTS DURING THE PROCESSING PERIOD OF THIS MORTGAGE APPLICATION. FAILURE TO DO SO MAY RESULT IN LATE PAYMENT FEES AND DEFINITELY WILL RESULT IN ACCRUED INTEREST DUE AT CLOSING.  ACCRUED INTEREST WILL REDUCE THE AMOUNT OF LOAN PROCEEDS, IF CLOSING COSTS ARE BEING PAID WITH PROCEEDS OR WILL INCREASE THE FUNDS DUE AT CLOSING, IF CLOSING COSTS ARE BEING PAID BY THE BORROWER/S.

4    IF YOU HAVE AN EXISTING TITLE INSURANCE POLICY FOR THE SUBJECT PROPERTY, YOU MAY BE ELIGIBLE FOR A DISCOUNT ON THE TITLE INSURANCE REQUIRED FOR THIS MORTGAGE.  PLEASE FORWARD A COPY OF YOUR POLICY TO THE CLOSING ATTORNEY NAMED ON PAGE ONE OF THIS COMMITMENT LETTER.

| _MM_ | _2/24/03_ | | |
|---|---|---|---|
| Initial | Date | Initial | Date |
| | | | |
| Initial | Date | Initial | Date |

Mark McArdle
10 Jana Lane
Stratham, NH 03885-
03-01-000094

## III:    ACCEPTANCE OF THIS COMMITMENT

You may accept this commitment by initialing pages one (1) and two (2), signing below, and returning a copy of this letter to the Bank by:

| **February 24, 2003** |
| --- |

For loans other than pre-approval applications, please be advised that upon the issue of this mortgage commitment the Bank will initiate the second phase of the mortgage process. This entails ordering the property appraisal, flood certificate, and forwarding your loan to the closing attorney to begin the legal and title work associated with your loan. For pre-approval applications, this process will begin upon the issue of the final commitment when you find a property and the pre-approval application becomes a final mortgage loan application.

By accepting this mortgage commitment you are agreeing that you will be responsible for all costs incurred by the Bank, or a designated provider for the Bank, in conjunction with your application. These costs may include, but not be limited to attorney's fees, whether or not the loan closes.

Amounts you have already paid in conjunction with this application are non-refundable, but will be credited to you as partial or full payment of the cost incurred by the Bank or a Bank representative.

Should there be a change in your situation and you do not feel that you will close this loan, please notify the Bank **in writing** as soon as possible so that we may cancel or put a hold on any activities that would result in additional expense to you.

> **All borrowers agree to execute all documents in conjunction with this loan as instructed by the Bank and the conveying attorney. All such individuals must be present at the time of the closing of this loan.**

> **By signing below I (we) acknowledge that I (we) have received and read the enclosed document entitled Mortgage Loan Commitment Addendum.**

If you have any questions or concerns about any conditions, please call your Loan Officer, **Paul Cheremka**, at (617) 430-3360 or your Loan Processor, **Mary T. Mai** at (978) 977-2275.

Commitment Issued By:

Janice Kaplan
Assistant Vice President

Cc:    Paul Cheremka

I (we) accept the terms and conditions of this Commitment

Mark McArdle

2/24/03
Date

Mark McArdle
10 Jana Lane
Stratham, NH 03885-
03-01-000094

# **⊕East Boston Savings Bank**®

## **Mortgage Commitment Addendum**

Borrower(s):

**Mark McArdle**

**Subject Property:**   10 Jana Lane, Stratham, NH 03885

**Commitment Date:  February 13, 2003**

## I      **REPAYMENT INFORMATION**

### A.     **Standard Fixed Rate Payment Mortgage:**

The above Principal and Interest Payment will be repaid in 360 equal monthly payments.

### B.     **Bi-Weekly Fixed Rate Payment Mortgage:**

The above Principal and Interest Payment represents the fixed payment that you make to the East Boston Savings Bank every other week. This represents twenty-six payments annually. The nature of the Bi-Weekly payment structure will result in a more rapid amortization of your loan. Please refer to the Truth-In-Lending Disclosure previously provided to you for details.

### C.     **Adjustable Rate Mortgage (ARM):**

The above stated Contract Interest Rate shall be considered the "Initial Interest Rate" only. This payment will be fixed for the number of years designated by the program you have selected. After that period of time, your payment will be adjusted periodically, according to the margin, index, and caps associated with the program.

For example: A 5/3 ARM will have a fixed rate for the first five (5) years. The rate will then be reviewed every three (3) years for the duration of the term of the loan.
East Boston Savings Bank will provide advance notice to you regarding the adjustment of your mortgage payment.

Please refer to the Adjustable Rate Mortgage Disclosure previously provided to you for more details regarding the adjustment features of your mortgage.

### D.     **Home Equity Lines of Credit (Prime Lines):**

The minimum monthly payment is 1.50% of the outstanding balance at the end of the monthly cycle, but not less than $100.00. Please refer to the initial disclosures received at application that describe the specifics of the loan program. Please be advised that making only minimum payments may not cover the interest that has accrued and "negative amortization" may occur. Negative amortization will increase the amount that you owe and reduce the equity in your home. **It is advisable to make additional payments to principal over and above the minimum required payment.**

At the end of the first ten (10) years, loans in good standing may apply to have the line re-written (refinanced). If that is not an option or choice, the credit line will be frozen and the outstanding balance will be restructured into a fixed rate, principal and interest payment in order to amortize the loan within the remaining five (5) years. The interest rate will be based on the Wall Street Journal Prime Rate at that time.

### E.     **Construction Loans:**

Construction loans have an initial period of interest only payments. The term of interest only payments is usually six (6) or nine (9) months. The bank reserves the right to set the interest only term on a case by case basis.

## II    GENERAL COMMITMENT CONDITIONS

### A.    Hazard, Fire, Flood, and Extended Coverage Policies:

Hazard/Fire and/or Flood insurance coverage in an amount equal to the loan amount or 100% replacement cost coverage is required at closing. You will be required to produce a receipt representing "payment in full" of the entire first year's premium.

All such insurance policies must contain a mortgagee's clause adding the Bank's insurable interest as follows:

> **East Boston Savings Bank,**
> **Its Successors & Assigns, ATIMA**
> C/o MGA Hazard Tracking, Inc
> P O Box 8455
> Reston, VA  20195

### B.    Title:

Title to the property is to be examined by the Bank's attorney and must be satisfactory to the Bank and the attorney.

➢ For all **first** mortgages the Bank, at your expense, will obtain a title insurance policy. Also, at your expense, you may request that the attorney obtain title insurance coverage to protect your interests. Regardless, the attorney will provide to you the applicable title certification required by the state statute.

➢ For Second Mortgages, Home Equity Lines of Credit, and Additional Collateral Liens, a title run down will be performed. Unless specifically required by the Bank and disclosed to the borrower/s, a title insurance policy will not be obtained. Title certification is not required on these loan types.

### C.    Smoke Detector:  (Purchases Only)

Compliance certificate must be brought to closing.

### D.    Notice of Right to Cancel:

Refinances, Home Equity Lines of Credit and Second Mortgages will be provided a right of rescission period. No disbursement of funds will be made until three (3) business days have elapsed from the date you signed the note, Right of Rescission Notice and other related loan documents.

### E.    Revocation of Commitment:

Subsequent to approval, if it is determined by the Bank's underwriters or counsel that certain financial or other material facts would adversely affect the Borrower(s) ability to repay this loan or impair the quality of the Bank's asset, the Bank may revoke its commitment; or it may be revoked if the title to the property offered as security for the loan shall not prove satisfactory to **East Boston Savings Bank**, notwithstanding any claim of a prior oral or written commitment by us or acceptance by you.

### F.    Septic Systems and Cesspools:

Massachusetts's law requires the inspection of existing private sewage disposal systems upon the transfer of property served by an on site system. Additionally, inspections must be conducted if the current homeowner is expanding the size of the property and a building or occupancy permit is required. The inspection must be conducted within a period beginning two years prior to the transfer and ending six months after the transfer. **East Boston Savings Bank** requires a copy of the inspection report, evidence the inspector is approved by the state of Massachusetts to complete the inspection, along with an affidavit from the System inspector and the seller stating that the original report was filed with the local Board of Health **PRIOR** to the loan closing.

### G.    Septic Systems and Cesspools (Continued):

If the inspection report indicates a problem with the existing system, the Bank will require the proper replacement or upgrade to be completed prior to the loan closing. In all cases, both the buyer and seller will be required to sign an indemnification letter at closing.

**Mortgage Commitment Addendum**
**(Continued)**

#### H.    Appraisal:

All loan commitments are made subject to the receipt and satisfactory review of a written appraisal on the subject property. The Bank will order all appraisals. Depending on the type of loan, this appraisal may be either an **exterior** appraisal or a **full** appraisal, whereby the appraiser must enter the subject property.

Please be advised that you may obtain a copy of any **full** appraisal report that we utilize in making our credit decision for the above referenced loan, without an additional charge or fee, by submitting a written request for this information within 90 days of this letter to:

<center>

**East Boston Savings Bank**
Loan Processing
Ten Meridian Street
East Boston, MA  02128
Attention:  Mary T. Mai

</center>

#### I.  Lead Paint Statute:

For all Massachusetts properties, you must comply with the requirements of the Massachusetts General Law, Chapter III, Section 97 (lead paint statute), to be provided at time of closing by conveying attorney.

#### J.    Plot Plan:

The Bank or a representative of the Bank, depending on the type of mortgage, will order a certified land survey or plot plan to ensure that there are no adverse issues regarding the property site.  The review of this plot plan must be satisfactory to the Bank.

#### K. Underground Oil Storage Tanks (USTs):

Under no circumstance will East Boston Savings Bank grant a mortgage loan to be secured by a property with an underground oil storage tank.

# EXHIBIT 6

# ADJUSTABLE RATE NOTE

### (3 Year Treasury Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| **March 20, 2003** | **Stratham** | **New Hampshire** |
|---|---|---|
| [Date] | [City] | [State] |

**10 Jana Lane**
**Stratham, NH 03885**
[Property Address]

## BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **95,000.00** (this amount is called "Principal"), us interest, to the order of the Lender. The Lender is **East Boston Savings Bank**

will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is titled to receive payments under this Note is called the "Note Holder."

## INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly te of **5.500 %**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any fault described in Section 7(B) of this Note.

## PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **May 1st, 2003** . I will make :se payments every month until I have paid all of the principal and interest and any other charges described below that I may 're under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before incipal. If, on **April 1st, 2033** , I still owe amounts under this Note, I will pay those amounts in full on that date, iich is called the "Maturity Date."

I will make my monthly payments at **10 Meridian Street**

**ist Boston, MA 02128**

at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **539.40** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must . The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with tion 4 of this Note.

**500288300**

.TI STATE ADJUSTABLE RATE NOTE-3 YEAR ARM-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3504 1/01
inded for New Hampshire

▶-862N(NH) (0008)

VMP MORTGAGE FORMS - (800)521-7291

1 of 4     Initials: 

## INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **April 2008**            , and on that day every 36th month ereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield 1 United States Treasury securities adjusted to a constant maturity of three years, as made available by the Federal Reserve )ard. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. ie Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO   AND   750/1000**
percentage points (                    **2.750 %**) to the Current Index. The ote Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to e limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid incipal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal ıyments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          **7.500 %** or less than
**3.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more an two percentage points (2.0%) from the rate of interest I have been paying for the preceding 36 months. My interest rate ill never be greater than          **9.500 %**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment ·ginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly yment before the effective date of any change. The notice will include information required by law to be given to me and also · e title and telephone number of a person who will answer any question I may have regarding the notice.

## BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a repayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a yment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my :payments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my :payment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the ncipal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment ess the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly ·ments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment y be offset by an interest rate increase.

## LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other n charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge ll be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the

500288300
Form 3504 1/0↗
Initials: _____

rincipal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be eated as a partial Prepayment.

## . BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **FIFTEEN**    calendar days 'ter the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **3.000 %** : my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a :rtain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all e interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or :livered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described ove, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be ud back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those :penses include, for example, reasonable attorneys' fees.

## GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by :livering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note older a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first ass mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that fferent address.

## OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in is Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is o obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its :hts under this Note against each person individually or against all of us together. This means that any one of us may be juired to pay all of the amounts owed under this Note.

## . WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. resentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the ht to require the Note Holder to give notice to other persons that amounts due have not been paid.

## . UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the te Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as ı Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this

500288300
Form 3504 1/01
Initials: _____

ote. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full
f all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is
not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written
consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.
However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information
required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and
(b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that
the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to
Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption
agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements
made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and
this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in
accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If
Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies
permitted by this Security Instrument without further notice or demand on Borrower.

## ?. ATTORNEYS' FEES

Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a)
y action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be
arded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to
action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the
urt shall consider equitable.

ITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  3/20/03 ___ (Seal)          _____ (Seal)
**ark A McArdle**                      -Borrower                                          -Borrower


_____ (Seal)              _____ (Seal)
                                  -Borrower                                               -Borrower


_____ (Seal)              _____ (Seal)
                                  -Borrower                                               -Borrower


_____ (Seal)              _____ (Seal)
                                  -Borrower                                               -Borrower

                                        Witness:

                                        _____          [Sign Original Only]
                                        Edward L. Lynch

                                                                           **500288300**

# EXHIBIT 7

# CERTIFICATE

I, Cathy Ann Stacey, Register of Deeds for the County of Rockingham, in the State of New Hampshire, do hereby certify that the within is a true copy of the record of an instrument recorded upon and in the Registry of Deeds of said County, and referenced as

_____Book 3982 Page 0069_____; the records of which I am the custodian.

Dated, Brentwood, NH _____April 4, 2007_____

Attest, _____*Cathy Ann Stacey*_____

BK3982PG0069

Return To:

East Boston Savings Bank
10 Meridian Street
East Boston, MA 02128

*MAIL TO*
*RETURN TO:*
*EDWARD L. LYNCH*
*ATTORNEY AT LAW*
*45 Franklin Street*
*Lynn, MA 01902*

Prepared By:
East Boston Savings Bank
10 Meridian Street
East Boston, MA 02128

031942

2003 MAR 24  PH 2: 53

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **March 20th, 2003**
together with all Riders to this document.

**(B) "Borrower"** is **Mark  A McArdle, an unmarried person**

Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is **East Boston Savings Bank**

Lender is a **Savings Bank**
organized and existing under the laws of **Massachusetts**

500288300

NEW HAMPSHIRE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3030  1/01

*VMP* -6 (NH) (0005).01
Page 1 of 15                         Initials: *MM*

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **10 Meridian Street, East Boston, MA 02128**

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **March 20th, 2003**
The Note states that Borrower owes Lender **NINETY FIVE THOUSAND AND 00/100**

Dollars

(U.S. $ **95,000.00**           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April 1, 2033**

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**500288300**

Initials: 

-6(NH) (0005).01                Page 2 of 15                Form 3030  1/01

BK3982PG0071

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender with mortgage covenants, and with power of sale, the following described property located in the                **County**              of              **Rockingham**                  :

[Type of Recording Jurisdiction]                 [Name of Recording Jurisdiction]

   See Exhibit A attached hereto and made a part hereof

Parcel ID Number:                                    which currently has the address of
**10 Jana Lane**                                                          [Street]
**Stratham**                              [City], New Hampshire  **03885**      [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

**500288300**

-6 (NH) (0005).01                  Page 3 of 15          Initials: _____          Form 3030  1/01

BK3982PG0072

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



BK3982PG0073

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



BK3982PG0074

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials:     500288300

BK3982PG0075

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: 

500288300

BK3982PG0076

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:           500288300

-6(NH) (0005).01          Page 8 of 15          Form 3030   1/01

BK3982PG0077

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



BK3982PG0078

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



BK3982PG0079

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



BK3982PG0080

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



BK3982PG0081

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale in the manner provided by Applicable Law to Borrower and other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender shall deliver to the purchaser Lender's deed conveying indefeasible title to the Property, discharged of all rights of redemption by Borrower. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Discharge.** The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charges tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the Property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

**24. Releases.** Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and other interests in the Property.

**25. Attorneys' Fees.** Pursuant to New Hampshire Revised Statutes Annotated Section 361-C:2, in the event that Borrower shall prevail in (a) any action suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.



BK3982PG0082

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Edward L. Lynch_

Edward L. Lynch

_____(Seal)

**Mark A McArdle**                    -Borrower

_____(Seal)
                                     -Borrower

_____(Seal)        _____(Seal)
                -Borrower                                 -Borrower

_____(Seal)        _____(Seal)
                -Borrower                                 -Borrower

_____(Seal)        _____(Seal)
                -Borrower                                 -Borrower

500288300

Form 3030  1/01

BK3982PG0083

MASSACHUSETTS
STATE OF ~~NEW HAMPSHIRE~~,                          Essex      County ss:

The foregoing instrument was acknowledged before me this
by
Mark A. McArdle

My Commission Expires:    June 5, 2003



Notary Public/~~Justice of the Peace~~    Edward L. Lynch

My Commission Expires:    June 5, 2003

Initials: 

500288300

Form 3030  1/01

BK3982PG0084

# Exhibit A - Property Description

Closing date:        **March 20, 2003**

Borrower(s):        **Mark A. McArdle**

Property            **10 Jana Lane, Stratham, New Hampshire 03885**
Address:

A certain lot or parcel of land, with the buildings thereon, situated on the Northeasterly side Jana Lane, in Stratham, Rockingham County, State of New Hampshire, and being known as Lot 4 on Plan entitled "Plan of Lots, Longview, Stratham, NH" for Walter L. and Eleanor K. Biery, dated August, 1972 by John W. Durgin, C.E., said Plan recorded in Rockingham Records No. D-3172, said lot being further bounded and described as follows:

BEGINNING on the Northeasterly side of said Jana Lane at the southerly corner of the herein described premises, thence N 55° 15' W along said Jana Lane 190.0 feet; thence N 34° 45' E along Lot No. 5 on said Plan 241.56 feet; thence S 54° 44' E along land now or formerly of Alexander 94.35 feet; thence S 54° 16' E still along said Alexander land 95.66 feet; thence S 34° 45' W along Lot No. 3 on said Plan 239.07 feet to the point of beginning.

For my title see deed recorded herewith.

w:\mtg\jana10

©1986-2003 Standard Solutions, Inc 781-324-0550

BK3982PG0085

# ADJUSTABLE RATE RIDER
### (3 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **20th** day of **March, 2003** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **East Boston Savings Bank**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**10 Jana Lane**
**Stratham, NH 03885**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **5.500 %**. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of **April 2008** , and on that day every 36th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**500288300**

MULTISTATE ADJUSTABLE RATE RIDER-3 YEAR ARM-Single Family-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT

-862R (0008)    Form 3114 1/01
Page 1 of 4    Initials:
VMP MORTGAGE FORMS - (800)521-7291

BK3982PG0086

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of three years, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 750/1000** percentage points ( **2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.500 %** or less than **3.500 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0% ) from the rate of interest I have been paying for the preceding 36 months. My interest rate will never be greater than **9.500%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**500288300**

Initials: 

862R (0008)        Page 2 of 4        Form 3114 1/01

BK3982PG0087

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that a risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

500288300

Initials: 

-862R (0006)                    Page 3 of 4                    Form 3114 1/01

BK3982PG0088

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
**Mark A McArdle**           -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower


**500288300**

-862R (0008)                    Page 4 of 4                    Form 3114 1/01

# EXHIBIT 8

TELEPHONE: (781) 581-3362                                                          FAX: (781) 581-6537
E-Mail: Elynch.Law@verizon.net

**EDWARD L. LYNCH**
ATTORNEY AT LAW
45 FRANKLIN STREET
LYNN, MASSACHUSETTS 01902

*FILE COPY*

March 20, 2003

**Danvers Savings Bank
Attn: Loan Servicing Department
One Conant Street
Danvers, MA  01923**

RE:        Borrowers:          **Mark A. McArdle**

           Property:           **10 Jana Lane
                                Stratham, NH 03885**

           Loan Number:        **1099911094**

Dear Sir or Madam:

Enclosed please find a check in the amount of **$83,530.59** representing the **mortgage** payoff on the above-referenced loan.

   **The payoff is broken down as follows:**

|              |              |
| ------------ | -----------: |
| Principal    | **$83,103.67** |
| Interest     | **$426.92** |
| Total Due:   | **$83,530.59** |

Said recorded with the **Rockingham Registry of Deeds** at **Book 3465, Page 1341.**. Please forward mortgage discharge to my attention at the above address upon your receipt of the mortgage payoff funds.  **Thank you.**

Very truly yours,


**Edward L. Lynch, Esquire**


**File No:03-2530**               **File ID:10 Jana Ln,Stratham**

# EXHIBIT 9



**Danvers Savings Bank**

MAIN OFFICE: ONE CONANT ST. DANVERS, MA 01923 • 978-777-2200     www.danverssavings.com

May 1, 2003

Edward L Lynch
Attorney at Law
45 Franklin Street
Lynn, Ma 01902

> **RE:   Discharge of Mortgage**
> Mark A McArdle
> 10 Jana Lane, Stratham, Ma  03885
> Loan # 1099911094

To Whom It May Concern:

Per your request, please find the enclosed discharge of mortgage for property located at
10 Jana Lane, Stratham, Ma  03885.

Please record said discharge with the Rockingham County Registry of Deeds and have
the recorded discharge mailed to Mark A McArdle.

Thank you,

Jonpaul Sallese
Loan Servicing Associate

*To deliver exceptional service*
*to employees, customers & the community.*

# DISCHARGE OF MORTGAGE

Property Address:
10 Jana Lane, Stratham, Ma  03885

Loan # 109991 1094

DANVERS SAVINGS BANK SUCCESSOR IN INTEREST TO REVERE FEDERAL SAVINGS AND LOAN ASSOCIATION a corporation duly established under the laws of the Commonwealth of Massachusetts, and located at One Conant Street, Danvers, Massachusetts 01923, holder of a mortgage from Mark A McArdle and Lorraine K McArdle to REVERE FEDERAL SAVINGS AND LOAN ASSOCIATION dated April 6, 2000 and recorded with the Rockingham County Registry of Deeds at Book 3465, Page 1341, acknowledge satisfaction of the same.

IN WITNESS WHEREOF, the said DANVERS SAVINGS BANK has caused its corporate seal to be hereto affixed and these presents to be signed in its name and behalf by WENDY A. KELLEY its ASSISTANT TREASURER this 1st day of May 2003.

Corporate Seal                                    DANVERS SAVINGS BANK

BY: _Wendy A Kelley_
Wendy A. Kelley
Assistant Treasurer

*Commonwealth of Massachusetts*

Essex, ss                                                            May 1, 2003

Then personally appeared the above-named WENDY A. KELLEY and acknowledged the foregoing instrument to be the free act and deed of DANVERS SAVINGS BANK, before me,

| Return to: |
| Mark A McArdle |
| Lorraine K McArdle |
| 10 Jana Lane |
| Sratham, Ma  03885 |

_Patricia A. Brennan_

Notary Public
My commission expires:



# EXHIBIT 10

BK4035PG1682

2003 MAY 21 AM 9:1

058343

Loan # 1099911094

# DISCHARGE OF MORTGAGE

Property Address:
10 Jana Lane, Stratham, Ma 03885

DANVERS SAVINGS BANK SUCCESSOR IN INTEREST TO REVERE FEDERAL SAVINGS AND LOAN ASSOCIATION a corporation duly established under the laws of the Commonwealth of Massachusetts, and located at One Conant Street, Danvers, Massachusetts 01923, holder of a mortgage from Mark A McArdle and Lorraine K McArdle to REVERE FEDERAL SAVINGS AND LOAN ASSOCIATION dated April 6, 2000 and recorded with the Rockingham County Registry of Deeds at Book 3465, Page 1341, acknowledge satisfaction of the same.

IN WITNESS WHEREOF, the said DANVERS SAVINGS BANK has caused its corporate seal to be hereto affixed and these presents to be signed in its name and behalf by WENDY A. KELLEY its ASSISTANT TREASURER this 1st day of May 2003.

058343 MAY 21 AM 9:17

Corporate Seal

DANVERS SAVINGS BANK

BY: Wendy A Kelley
Wendy A Kelley
Assistant Treasurer

*Commonwealth of Massachusetts*

Essex, ss

May 1, 2003

Then personally appeared the above-named WENDY A. KELLEY and acknowledged the foregoing instrument to be the free act and deed of DANVERS SAVINGS BANK, before me,



Notary Public
My commission expires:




**Return to:**
*Mark A McArdle*
*Lorraine K McArdle*
*10 Jana Lane*
*Stratham, Ma 03885*

RETURN TO:
EDWARD L. LYNCH
ATTORNEY AT LAW
45 Franklin Street
Lynn, MA 01902

ROCKINGHAM COUNTY
REGISTRY OF DEEDS